**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**KEITH B. RICHARDSON, Defendant**

Crim. No. ST-08-CR-461

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 23, 2009

COURTNEY REESE, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Plaintiff*.

RICHARD P. FARRELLY, ESQ., Birch, DeJongh & Hindels, PLLC, Poinsetta House at Bluebeard's Castle, St. Thomas, USVI, *Attorney for Defendants*.

CARROLL, *Judge*

## MEMORANDUM OPINION

(December 23, 2009)

**THIS MATTER** is before the Court following the parties' briefing on the issue of the proper procedure to follow in determining whether Defendant is mentally competent to stand trial, and, if not, what provisions of the statutes give power to this Court to order commitment or treatment of the Defendant. The People are represented by Courtney Reese, Esq., Assistant Attorney General. The Defendant is represented by Richard Farrelly, Esq., of Birch, DeJongh and Hindels. After consideration of the issue presented, the Court concludes that it will require that the People of the Virgin Islands advise the Court within ten (10) days of the date of this Order whether they intend to proceed with the trial of this matter, or whether they wish to seek a dismissal of the case or the civil commitment of the Defendant.

## FACTS

On November 3, 2008, Officer Charmayne Thomas was in the area of Mandela circle in Charlotte Amalie, St. Thomas, when she came into contact with an irate female who stated that another female had been assaulted by a male later identified as Keith Richardson ("Richardson"). Debra Frett had stopped at a traffic light when Richardson approached her and demanded money. When she refused to give him money, Richardson began to shake her automobile. Ms. Frett exited her vehicle to stop

Richardson, and at that point, he picked up two large stones and raised them in the air. Afraid for her safety, Ms. Frett went to get a baseball bat and Richardson backed away from her vehicle. Officer Thomas, based upon the information given to her, found Richardson and directed him to come to her car. Richardson became angry and raised two stones and threatened to throw them at the Officer. He was ordered to drop the stones, and he was subsequently placed under arrest. Based upon this conduct, Richardson was charged with several minor violations of the law, including simple assault, vagrancy, disturbance of the peace and interfering with an officer performing his or her duty.[1]

At Richardson's first appearance in court on November 5, 2008, the Court did not set bail, or advise Richardson of his rights, but remanded Richardson for a psychiatric evaluation. The Order for psychiatric evaluation was signed on November 6, 2008, and directed that Dr. Leighmin Lu determine whether or not Richardson was competent to stand trial, whether or not Richardson was suffering from a mental illness on the date of the alleged offense, and whether the act charged against him was committed as a consequence of such mental illness.

On November 13, 2008, Richardson appeared in Court for arraignment and pleaded not guilty to a four-count information charging him with

---

[1]    Simple assault is defined in the criminal code as an attempt to commit a battery, or the making of a "threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." V.I. CODE ANN. tit. 14, § 291 (1996). Simple assault is punishable by a fine of not more than $250 and/of imprisonment lasting not more than six months. V.I. CODE ANN. tit. 14, § 299(1) (1996) (Supp. 2009) Vagrancy is defined as "being in any street, highway or public place" and "accost[ing] a stranger or follow[ing] him about, without lawful authority or excuse." Tit. 14, § 2221(a)(5). Vagrancy is punishable by a fine of not more than $5,000 or imprisonment of not more than ninety days or both. Tit. 14, § 2221(a). Disturbance of the peace is defined as "maliciously and willfully disturb[ing] the peace or quiet of any village, town, neighborhood or person, by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing quarreling, challenging to fight or fighting." Tit. 14, § 622(1). It is punishable by a fine of not more than $100, imprisonment of not more than ninety days, or both. *Id.*, § 622. Interfering with an officer discharging his or her duty is defined as "willfully resist[ing], delay[ing] or obstruct[ing] any public officer in the discharge, or attempt to discharge any duty of his office." Tit. 14, § 1508. This charge is punishable by a fine of not more than $500, imprisonment of not more than one year, or both. *Id.*

simple assault, vagrancy, disturbance of the peace and interfering with an officer discharging his or her duty.[2]

Dr. Leighmin Lu filed his psychiatric evaluation of Richardson on January 21, 2009. In his report, Dr. Lu detailed a long history of Richardson's mental illness going back to 1979, including numerous hospitalizations in St. Thomas and elsewhere. As Dr. Lu noted in his report, between 1979 and 2001, Richardson was hospitalized six times at the Psychiatric Unit of Roy L. Schneider Hospital and also treated intermittently at the Mental Health Clinic from 1978 to September 24, 2008. Dr. Lu noted that Richardson's behavior was bizarre and inappropriate and that he was grossly delusional, disorganized and scattered in thinking. With medication, his mental status improved. Dr. Lu concluded that Richardson understood the nature of the charges against him and could cooperate with his attorney to prepare a defense. Dr. Lu also concluded, though, that Richardson was suffering from schizophrenia and substance-induced psychosis on the date of the incident and that the act charged against him was committed as a consequence of such mental disorder.

On March 5, 2009, the parties appeared for a bench trial, pursuant to V.I. CODE ANN. tit 14, § 4 (1996).[3] Prior to trial, the parties notified the Court that Richardson and the People of the Virgin Islands ("the People") had reached a plea agreement. Assistant Attorney General Courtney Reese appeared on behalf of the People and Richard P. Farrelly, Esq., of the Law Offices of Birch, deJongh & Hindels, PLLC, was present on behalf of Richardson. After hearing testimony from Dr. Lu, who testified for the People, and engaging in *voir dire* with Richardson, the Court, upon consideration, found that Richardson was unable to understand the nature of the proceedings and was unable to assist Attorney Farrelly in his efforts on Richardson's behalf. This determination was made as the result of a brief questioning of Richardson during which he indicated that he did not know where he was, and did not understand who the participants in the courtroom were. During the course of the proceedings, Dr. Lu changed his

---

[2]  At the time of the arraignment, the Court was not made aware of the Defendant's incompetence.

[3]  In cases involving misdemeanor charges only Title 14, Section 4 provides the Court with discretion to limit the maximum period of imprisonment to six months and proceed with a bench trial.

position regarding Richardson's competence and stated that he was only "marginally competent." Following the hearing, the Court requested that the parties brief the Court regarding its authority to commit the defendant for mental examination, evaluation and treatment. The Court is now in receipt of briefs from both sides regarding the procedure that should be adopted in this case. The Court concludes that this area of the law is murky, and that there are no clear procedures to be followed. The Court will direct the People to advise it within ten (10) days of the date of this Order whether they intend to proceed with the prosecution of this matter.

## DISCUSSION

■ As Attorney Farrelly notes in his Supplemental Briefing, Virgin Islands law regarding competency to stand trial remains unsettled. Attorney Farrelly correctly states that the Supreme Court of the Virgin Islands, in *Government of the Virgin Islands v. Durant*, 49 V.I. 366 (Sup. Ct. 2007), rejected the use of federal statutes that provide guidance on this issue:

> Notably, [U.S. Code Title 18] Chapter 313's provisions are *substantive* law enacted by Congress dealing with mentally-impaired defendants charged with *federal crimes. . . .* Therefore, the trial court's use of Superior Court Rule 7 as a conduit to apply Federal Rule of Criminal Procedure 12.2(c)(1)(A), and thereby incorporate the substantive federal statutory provisions of Chapter 313, was an unauthorized exercise of the Superior Court's rule-making authority.

*Durant*, 49 V.I. at 372-74. Clearly, then, this Court may not employ the provisions in title 18 of the U.S. Code that guide federal courts in their handling of potentially incompetent defendants. The Supreme Court did note that the Virgin Islands Legislature has provided certain statutes relating to mental illness and insanity. *Id.* at 375. We now examine these Virgin Islands statutes to determine whether they give the Court any guidance in determining the proper procedure to be followed with respect to this case.

## I. Virgin Islands Code Provisions

### A. V.I. CODE ANN. tit. 5, § 3637

One of the statutes to which the Supreme Court referred, V.I. CODE ANN. tit. 5, § 3637 (2005), provides the Court with authority to discharge

any person confined in a "forensic unit . . . in accordance with the law" if the Court finds that the person has regained his mental capacity and will not be a danger to himself or others. Tit. 5, § 3637(b). However, section 3637(b) applies to those individuals who have been found not guilty by reason of insanity and subsequently confined to a public institution, as the Supreme Court noted in *Durant*, or confined "otherwise in accordance with the law." 49 V.I. at 375 n.9. Moreover, this provision provides for the discharge, not commitment, of defendants. Section 3637, therefore, provides little guidance to the Court on how to deal with defendants who, because of their incompetence, cannot be tried at all, and therefore does not provide a procedure whereby they can be committed in the first place.

### B. V.I. CODE ANN. tit. 19, § 1201

The Supreme Court also referenced V.I. CODE ANN. tit. 19, § 1201(c) (1995). Section 1201 is entitled "Discharge of patients." This section allows a court to release a person who was committed by "order of a court having criminal jurisdiction in any action or proceeding arising out of a criminal offense." Tit. 19, § 1201(c). It is similar to title 5, section 3637, but is broader: while section 3637(b) provides for the discharge of patients confined to an institution after a finding of not guilty by reason of insanity, or otherwise in accordance with the law, title 19, section 1201(c) allows for the discharge of any patients by a court that has criminal jurisdiction over them, regardless of whether they have been tried for an offense. Nonetheless, just like section 3637, this section only provides the Court with the authority to release, rather than commit, an individual.

### C. V.I. CODE ANN. tit. 19, § 1202

■ Another provision cited in *Durant*, V.I. CODE ANN. tit. 19, § 1202 (1995), provides for the commitment of any person who, when "eligible for discharge from the penitentiary or during his term of incarceration," is alleged by the Police Commissioner to be "mentally ill," and who the courts have adjudicated to be "mentally ill." Tit. 19, § 1202. It further provides that the expenses for the commitment and treatment of that prisoner will be paid for by the government "upon the certificate of the Police Commissioner." Tit. 19, § 1202. However, this section raises serious constitutional questions, as the statute does not require any finding that the prisoner is a danger to himself or others. *See O'Connor v.*

*Donaldson*, 422 U.S. 563, 576, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975) ("[A] State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom"); *U.S. v. Perry*, 788 F.2d 100, 112-13 (3d Cir. 1986) ("[A] demonstration of dangerousness justifies deprivation of liberty by civil commitment without offending the substantive due process limitation upon government."). Even if that were not a consideration, the person must be serving a sentence or eligible for discharge before this provision comes into play. How such a person might be serving a sentence, and therefore might be committed, if that person may not in the first instance be tried, remains a very difficult question.

### D. V.I. CODE ANN. tit. 19, § 723

Finally, the only other section cited by the Supreme Court, V.I. CODE ANN. tit. 19, § 723 (1995), allows a "spouse or guardian, a relative, the certifying physician, mental health professional or the Administrator in charge of any approved public treatment facility" to petition a court for the involuntary commitment of a person to the custody of the Department of Health. Tit. 19, § 723. This provision may provide some avenue for relief for the People. The People's mental health professionals may employ this provision where appropriate to seek commitment or treatment of an incompetent defendant. Section 723 requires that the petition allege the person "(1) has threatened, attempted or inflicted physical harm on himself or another and that unless committed is likely to inflict physical harm on another; or (2) is incapacitated by alcohol or drugs." Tit. 19, § 723(a). The petitioner must prove these elements by clear and convincing evidence. Tit. 19, § 723(d).

The first two provisions referenced by the Supreme Court, title 5, section 3637, and title 19, section 1201, deal only with discharging patients and provide no guidance to the Court on how to proceed with incompetent defendants. While section 1202 does provide for the commitment of someone adjudged to be mentally ill, it does not state the standard a court should use in determining whether to so adjudge the defendant. Furthermore, there is no definition in the Code of what constitutes mental illness. Finally, there is a difference between mental illness and competency to stand trial: it is conceivable that a person who is mentally ill may be competent to stand trial, and also conceivable that a person incompetent to stand trial may not be mentally ill.

217

Section 723 does not deal specifically with defendants and, furthermore, requires one of the listed persons to petition the Court before the person may be involuntary committed. There is no provision for the Court to do this on its own: the statute requires one of the enumerated petitioners to take some affirmative action to seek the Court's aid.

Several sections not cited by the Supreme Court, V.I. CODE ANN. tit. 19, §§ 1131-43 (1995), provide for the arrest and commitment of mentally ill persons, and detail how a warrant ought to be executed and how a trial ought to be conducted regarding the person's mental illness. However, these provisions only apply when "the welfare of [the person] or of others requires that he be placed in restraint." Tit. 19, § 1131. The Court, though, may *not* commit a person under section 723, section 1131, or any other section, if "some relative or friend will undertake before the judge . . . to assume his care and restraint."[4] Tit. 19, § 1172.

## II. The Virgin Islands Code Does Not Provide Sufficient Guidance on This Matter.

■ None of the sections cited above provides a procedure to be followed when a trial court encounters a person who may not be competent to stand trial, but who may also not be a danger to himself or others. Ordinarily, a court would hold a competency hearing and submit a defendant for treatment until such time as he is competent to be tried for the crimes charged. However, this Court is not expressly given those powers, and the procedure to be followed has not been detailed by the Virgin Islands Legislature. In the absence of guidance concerning these issues from the Virgin Islands Legislature, the Court must still be bound by the strictures of the Constitution and the Revised Organic Act § 3.[5] The Court must ensure that the due process rights of defendants are not violated by compelling them to stand trial when they are neither able to assist in their own defense nor able to understand the nature of the

---

[4] "No warrant shall issue to convey a mentally ill person to the mental hospital if some relative or friend will undertake before the judge of the district court, to assume his care and restraint, and will execute a bond in the sum to be fixed by the judge." V.I. CODE ANN. tit. 19, § 1172.

[5] The provisions of the Bill of Rights of the U.S. Constitution do not apply to the Virgin Islands directly since it is an unincorporated territory. The Revised Organic Act § 3 provides its own due process guarantee, mirroring the relevant clause in the Fifth Amendment to the U.S. Constitution. *See also* 48 U.S.C. § 1561.

proceedings. *Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) (recognizing the well-established rule that the "criminal trial of an incompetent defendant violates due process").

Considering the Constitution's strictures and the gaps in the Code regarding evaluation, treatment and commitment of incompetent Defendants, the Court is faced with limited options, none of which are entirely satisfactory. The Court may: (1) attempt to proceed with the ultimate disposition of the matter on the merits; (2) dismiss the case entirely, on its own motion or on the motion of Richardson; or (3) invite the prosecution to consider either dismissing the matter; or (4) petitioning the Court for the Defendant's civil commitment.

■ The first option is problematic. In *Durant*, the Supreme Court observed that requiring the executive to treat defendants so as to make them competent would require the expenditure of monies where the Legislature has not yet appropriated any. *Durant*, 49 V.I. at 376 n.11. However, notwithstanding the Supreme Court admonition, this Court would have to adopt some procedures to assure that the Defendant was competent to proceed with trial or to change his plea. Not attempting to move the case forward in some manner would deny the Defendant due process of law. *See Medina v. California*, 505 U.S. 437, 453, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) (stating that trying incompetent defendants violates due process); *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972) (holding that the indefinite detention of a defendant because he lacks capacity to stand trial violates due process and that a defendant may be held for no longer than the reasonably period necessary to determine his likelihood of regaining competence). The Court will not outline what those procedures would be at this time, and would prefer that before pursuing such a course, the People advise the Court whether it will be proceeding with the trial of this matter.

■ Another possible option is for the Court to dismiss the case entirely in the interest of justice on its own motion or on the motion of Richardson. *See Jackson*, 406 U.S. at 738 ("If it is determined that [there is not a substantial probability the defendant will regain competence], then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant."). Because Richardson is charged with misdemeanors only, and because of the Court's invocation of V.I. CODE

ANN. tit. 14, § 4 (1996), Richardson could only serve a maximum of six (6) months imprisonment if he were tried and convicted.[6] At this time, Richardson has been held in pretrial detention for approximately twelve months, unable to even plead guilty because of his inability to understand the nature of the proceedings and to assist his attorney in his defense. Had he been able to plead guilty, he would have been released on the date that his change of plea was accepted or shortly thereafter. It may well be in the interest of justice to dismiss the case against him, particularly since Richardson is charged with minor offenses. However, this option is not a permanent solution to the quandary facing the Virgin Islands trial courts of what to do with incompetent defendants. If the Court were faced with a defendant charged with a serious felony, for example, it would certainly be presented with a troubling dilemma. A decision to terminate such a prosecution in the interest of justice would present a substantial problem.

█ The question of whether the case should be dismissed in the interest of justice or whether the prosecution should be pursued at all is best answered by the People, and the Court invites the prosecution to make a decision whether it wishes to continue prosecuting this matter or to move to dismiss the Information. *See In re Richards*, 52 F. Supp. 2d 522, 530, 40 V.I. 161 (D.V.I. App. Div. 1999) ("Under the common law analysis, the government has unfettered discretion to determine when to prosecute a criminal matter.")

Finally, the Court could also invite the People to petition for Richardson's civil commitment. The People could employ title 19, section 723, or another section, to request the involuntary commitment of Richardson. They would need to allege that he is mentally disturbed and that he "has threatened, attempted or inflicted physical harm on himself or another and that unless committed is likely to inflict physical harm on another." Tit. 19, § 723(a)(1).

The Court recognizes that this is a situation, certain to recur, in which the intervention of the Legislature is sorely needed. The Judiciary requires a set of clear procedures to follow in these circumstances. At this time, however, the Court will refrain from taking any further independent action until such time as the People have a chance to make any

---

[6]    Richardson is charged with violating V.I. CODE ANN. tit. 14, §§ 299(1); 2221(a)(5); 622(1) and 1508. These are not crimes of violence of violence according to V.I. CODE ANN. tit. 23, § 451 (1993), and all are misdemeanor crimes.

appropriate requests. Accordingly, the Court will give the People an opportunity to move forward with the trial of this matter, move for dismissal of this matter or for the mental health commitment or treatment of Richardson pursuant to section 723 or any other statute, should the People find that course of action appropriate.

## CONCLUSION

The Defendant is unable to understand the nature of the proceedings against him or assist in his own defense. He cannot now be tried on the charges the People have brought against him. Therefore, the People will be given an opportunity to move forward with the trial, request dismissal of the case against Richardson or move for his civil treatment or commitment.

## ORDER

In accordance with the Memorandum Opinion of even date, it is hereby

**ORDERED** that the People shall advise the Court on or before **Monday, January 11, 2010** whether they intend to proceed with the prosecution of this matter, move to dismiss the Information or to petition the Court for the civil commitment of the Defendant; and it is further

**ORDERED** that copies of this Order shall be directed to counsel of record.